3 N.Y.2d 206 (1957)
In the Matter of Hotel Association of New York City, Inc., et al., Appellants,
v.
Robert C. Weaver, as State Rent Administrator, Respondent.
Court of Appeals of the State of New York.
Argued April 12, 1957.
Decided July 3, 1957.
Charles W. Merritt for appellants.
Beatrice Shainswit and Nathan Heller for respondent.
DESMOND, DYE, FULD, FROESSEL, VAN VOORHIS and BURKE, JJ., concur.
*208 CONWAY, Ch. J.
This is an appeal by permission of the Appellate Division, First Department, from its order affirming without opinion an order of the Supreme Court, New York County, which dismissed a petition filed pursuant to article 78 of the Civil Practice Act and section 9 of the State Residential Rent Law (L. 1946, ch. 274, as amd.).
The petitioner Hotel Association of New York City is a membership corporation consisting of, and representing, 171 hotels in New York City. The petitioner Hotel Wellington, Inc., is the owner-operator of the Hotel Wellington located in Manhattan, and containing housing accommodations subject to control under the State Residential Rent Law. The original proceeding was brought under subdivision 1 of section 12 of that law for an order decontrolling the rents of rooms contained *209 in hotels in New York City. Subdivision 1 of section 12 (as amd. by L. 1955, ch. 685) provides: "1. Whenever the commission shall find that, in any municipality specified by the commission, (a) the percentage of vacancies in all or any particular class of housing accommodations is five per centum or more, or, (b) the availability of adequate rental housing accommodations and other relevant factors are such as to make rent control unnecessary for the purpose of eliminating speculative, unwarranted, and abnormal increases in rents and of preventing profiteering and speculative and other disruptive practices resulting from abnormal market conditions caused by congestion, the controls imposed upon rents by authority of this act in such municipality or with respect to any particular class of housing accommodations therein shall be forthwith abolished; provided however that, except as otherwise provided in this section, no controls shall be abolished by the commission unless the commission shall hold a public hearing or hearings on such proposal at which interested persons are given a reasonable opportunity to be heard."
The appellants in their petition to the Rent Administrator requested that the commission:
(a) make a finding that hotels are a class of housing accommodations within the meaning of section 12;
(b) make a finding that the percentage of vacancies in housing accommodations in New York City hotels is more than 5%;
(c) make a further finding that the availability of housing accommodations in hotels in New York City, and other relevant factors, are such as to make rent control of such accommodations unnecessary for the purpose of eliminating speculative, unwarranted and abnormal increases in rents and of preventing profiteering and speculative and other disruptive practices resulting from abnormal market conditions caused by congestion;
(d) hold a public hearing on this petition;
(e) thereafter issue an order abolishing controls on rents of housing accommodations in hotels in New York City;
(f) in the alternative, make a finding that hotels of 125 rooms or more are a class of housing accommodations within the meaning of section 12; that the percentages of vacancies therein is more than 5%; hold a public hearing thereon and thereafter issue an order abolishing the control on rents in *210 such part of the housing accommodations as are located in hotels of 125 rooms or more in New York City;
(g) in the alternative, take the same steps in relation to any other limited class of housing accommodations located in hotels in New York City as may be consistent with the purposes of the State Residential Rent Law.
Annexed to the petition were certain data and statistics relating to the percentage of vacancy in the total number of rooms, controlled and decontrolled, in 80 hotels in New York City, constituting 53% of the total hotel rooms in the city. Though the statistics were broken down among transient, semitransient, and residential hotels, no attempt was made in arriving at an average vacancy figure to separate controlled from decontrolled units. Though figures were produced to show the rents being paid for varying sizes of units subject to control, there was nothing to show the percentage of vacancy at the various rental levels. No figures were submitted regarding the percentage of vacancy in housing accommodations other than hotels. Petitioners' exhibit "B" is a photostat of portions of a leading daily newspaper during October, 1955, in which 61 New York hotels had placed advertisements for tenants. These are the few facts, briefly stated, which the appellants submitted to the commission as warranting decontrol. The administrator denied the petition in all respects in a decision which in substance set forth the following grounds:
1. Subdivision 1 of section 12 does not apply "to protected hotel tenants as such, except insofar as they are deemed to be part of the total controlled housing population of the State. This latter class comprise the permanent housing population * * *." (Emphasis added.)
2. The phrase "in any particular class" as contained in subdivision 1 of section 12 refers not to the location within a certain type of building but to accommodations within a particular price range. Therefore, since a 5% vacancy ratio was not shown to exist within a class as defined above, but related only to hotels in general, there is no basis for decontrol under subdivision 1 of section 12.
3. Petitioners failed to establish pursuant to section 12 (sub. 1, par. [b]) "that there are adequate rental housing accommodations available which could be rented by the controlled hotel tenants at rentals which would not result in speculative, *211 unwarranted and abnormal increases in rents or `hardship and dislocation.'"
4. In view of the foregoing, the petitioners were not entitled to a public hearing under section 12.
It may perhaps be noted also that the administrator claims approximately 20,000 tenants would be affected by the decontrol requested, whereas the petitioners place the figure at only 10,000.
If, as the petitioners contend, the ruling of the administrator is arbitrary, capricious and unreasonable, and not in accordance with the law, then we must reverse.
There is no provision in the statute which specifies that hotels as such shall constitute a "class of housing accommodations". Section 4 (subd. 4, par. [a]) of the act authorizes the commission to promulgate such rules and make such orders as it may deem necessary or proper to effectuate the legislative purpose. Subdivision 6 of section 4 provides that an order may contain such classifications and differentiations "as in the judgment of the commission are necessary or proper in order to effectuate the purposes of this act." (Emphasis added.) Clothed with this latitude of discretion, the administrator was here called upon to construe and apply the broad phrase, "any particular class of housing accommodations". This phrase, it should be noted, was not contained in the 1950 enactment (L. 1950, ch. 250), but was added by amendment in 1951 (§ 12, subd. 1, as amd. by L. 1951, ch. 443), which was enacted upon the recommendation of the commission. Indeed, those very words were suggested by the commission. Thus, not only was an administrative agency charged with the duty of initially construing and applying broad statutory language, but that language was its own. In construing and applying its own suggested words as now contained in the statute, it was bound to effectuate the purpose of the Legislature which was declared to be the prevention of the "exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices" (§ 1, subd. 1). It was in this setting that the administrator determined that for purposes of decontrol, the word class refers not to the particular type or nature of the accommodation, e.g., hotels, but to accommodations in the general housing market which fall in the same rental level regardless of the fact that the accommodation happens to be in a particular type of building. The *212 basis for this conclusion was that tenants who occupy accommodations at the lowest price levels do not compete with tenants in accommodations at the highest rent levels. If, as the petitioners request, the class were determined simply by the type of building involved, a substantial vacancy in high-priced accommodations would result in the decontrol also of low-priced accommodations as to which there is, or may be, a shortage. Decontrol on the basis of an over-all 5% vacancy in hotels would force those tenants out into an uncontrolled housing market in which the availability of accommodations is not such as to preclude the danger sought to be guarded against by the Legislature  the prevention of exactions of oppressive rents and the forestalling of profiteering and other disruptive practices. Thus it was felt by the administrator that a class should be determined only on the basis of amount of rent charged so that, in keeping with the statutory purpose, when a particular class should be decontrolled there would be available to the previously protected tenants a sufficiently free market to permit the resumption of normal bargaining between landlords and tenants. This would prevent the exaction of oppressive rents and forestall speculation and profiteering. The commission having thus exercised its power, it remains only to determine whether it has been guilty of an abuse of it.
Petitioners contend that the only proper way to interpret the word "class" is to conclude that hotels, as such, constitute a class for purposes of decontrol. They base their position on the fact that for other purposes hotels have been treated differently, and as a class, because in their nature they provide not only shelter, but extensive services. It would serve no useful purpose to burden this opinion with specific references and discussion in this connection. It is enough to say that most of them have nothing to do with the problems which surround decontrol. Manifestly, classifications have validity only insofar as they are reasonable in the context of the attendant situation, and have substantial relation to the problem to be remedied. The only instance cited which has any relevance is the decontrol by Congress in 1947 of hotels as such. However, not only is that fact of no binding force here, but in addition it is entirely without efficacy for purposes of demonstrating an abuse on the part of the commission. For the issue in this case is not, as the petitioners appear to contend, what the *213 "proper" interpretation of "class" is, nor whether "class" could or has been interpreted to mean hotels, but whether the interpretation of the word "class" adopted by the commission is arbitrary or capricious. For it is well-established that this determination cannot be disturbed: "* * * if it has `warrant in the record', `a reasonable basis in law' and is neither arbitrary nor capricious. [Citing cases.] The `judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body'". (Matter of Park East Land Corp. v. Finkelstein, 299 N.Y. 70, 75.) We think it needs no lengthy discussion to state that the conclusion of the commission was reasonable and founded upon a completely rational basis. Clearly, the classification adopted is well suited to the purposes of the State Residential Rent Law, and has a substantial and reasonable relation to a legitimate public purpose  the prevention of exactions of unjust rents and profiteering.
It should be noted that by the enactment of 1950 the sole responsibility for decontrol of all controlled housing was placed on the commission by way of section 12 as since amended. Nontransient hotels were part of the over-all controlled housing market, and except as the Legislature has since determined to directly effect partial decontrol of hotels, as it has other types of housing, it remains such and has been so placed by the commission in the case at bar. For example, in 1951 the Legislature removed controls from all housing in hotels in New York State except that it continued control over those hotel accommodations in Buffalo and New York City which were then occupied by a tenant who had continuously there resided since December 2, 1949, so long as that tenant should continue to there reside (§ 2, subd. 2, par. [b], as amd. by L. 1951, ch. 443). In 1953, the Legislature decontrolled housing accommodations in one- or two-family houses which were at that time, or would become thereafter, vacant (L. 1953, ch. 321, § 3). In that year also all housing accommodations in the State were decontrolled which were rented after April 1, 1953 and which had been occupied by the owner for one year prior to the renting, with other provisions (id., § 2). In 1955 all owner-occupied two-family houses, and all one-family houses, in five counties were decontrolled, with other provisions (§ 2, subd. 2, par. [j], as amd. by L. 1955, ch. 685). Despite *214 these instances of direct legislative decontrol, the power to decontrol, with the concomitant right to establish classifications, was continued in the commission by virtue of the re-enacted provisions of section 12. Petitioners argue that since the instances of direct legislative decontrol were not made dependent upon rent levels, but upon types of structures and geography, this is the only proper classification and the commission erred in not following the prior legislative approach. To this there are at least two answers. First, the Legislature retained and re-enacted the provisions of section 12 and section 4 which place discretion in the commission in respect to decontrol over the general controlled housing supply and to make classifications. It cannot be said that by directly decontrolling certain accommodations as they did, they ousted the commission of the right and power they themselves conferred upon it to make such classifications "as in the judgment of the commission are necessary or proper in order to effectuate the purposes of this act." Secondly, it is important to note that although this case had been decided adversely to petitioners by both Special Term and the Appellate Division, the Legislature has nevertheless since re-enacted the section without any change as to how the commission shall classify housing for purposes of decontrol (L. 1957, ch. 755). It may be presumed that the Legislature thereby acquiesced in the commission's determination (cf. Pouch v. Prudential Ins. Co., 204 N.Y. 281, 288).
In view of the foregoing, the statistics advanced by the appellants seeking to establish a vacancy rate of 5% for hotels, in and of themselves, as a particular class of accommodations under the decontrol provisions of section 12, are insufficient to warrant the relief requested. The figures are confined to hotels and do not encompass the general class of controlled housing accommodations into which the protected hotel tenants have been placed by the commission. Likewise have the petitioners failed to show a right to decontrol under section 12 (subd. 1, par. [b]) which authorizes decontrol where the availability of rental housing accommodations and other relevant factors make rent control unnecessary to eliminate speculative, unwarranted and abnormal increases in rents and to prevent profiteering and other disruptive practices resulting from abnormal market conditions caused by congestion in "any *215 particular class of housing accommodations". Since the statistics submitted were far from adequate to establish the statutory condition precedent to decontrol, the commission properly denied appellants' request for a public hearing. A fair reading of subdivision 1 of section 12 clearly demonstrates that the Legislature contemplated a hearing if, and only if, the right to decontrol were established prima facie.
Appellants advance two constitutional arguments. They first claim that the classification adopted by the commission violates the due process clause of the Federal Constitution, and the equal protection of the law clauses of the State and Federal Constitutions. This contention is advanced on the ground that hotel accommodations, since they include not only shelter but services also, must be classified separately and to place them in the same class as other accommodations bears no reasonable and substantial relation to the public purpose sought to be accomplished by the Legislature. We think it has been amply demonstrated above that the classification adopted by the commission is based "upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed". (Southern Ry. Co. v. Greene, 216 U. S. 400, 417.) Consequently, the appellants have not suffered the unconstitutional invasion complained of.
It is further contended that any control of rents whatever of hotels in New York City is unconstitutional since the emergency in housing has ceased as far as hotels are concerned. It is suggested that "this Court should declare the Emergency Housing Rent Control Law invalid as to hotels in New York City". This we are asked to do because the appellants have produced some meager statistics to show only that in 80 New York City hotels, representing only about 53% of the total hotel rooms in the city, there was a 17.21% vacancy rate. On April 20th of this year, our Legislature declared: "The legislature hereby finds that a serious public emergency continues to exist in the housing of a considerable number of persons in the state of New York * * *; that there continues to exist an acute shortage of dwellings * * *; that such action [rent control] is necessary in order to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering * * *; that *216 the transition from regulation to a normal market of free bargaining between landlord and tenant, while still the objective of state policy, must be administered with due regard for such emergency * * *." (State Residential Rent Law, § 1, subd. 1, as amd. by L. 1957, ch. 775, § 1.) We are familiar with the oft-repeated proposition that "A legislative enactment carries with it a strong presumption of constitutionality, i.e., it is presumed to be supported by facts known to the Legislature [citing cases]." (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 415.) While this presumption is not irrebuttable (Defiance Milk Prods. Co. v. Du Mond, 309 N.Y. 537, 541), the unconstitutionality must be clearly demonstrated (Lincoln Bldg. Associates v. Barr, supra). As noted above, the Legislature found that an emergency existed as to numerous housing accommodations as recently as two and one-half months ago. Hotels in New York City are still included in the State Residential Rent Law. We are unable to say that this recent declaration of the Legislature (which is concerned with the situation as it presently exists and long after the date during which the appellants claim a cessation of the emergency occurred) has been shown to be without factual basis by the appellants. In our judgment, a demonstration that in 80 hotels, representing only about 53% of all hotel rooms in New York City, there is a 17.21% vacancy rate hardly approaches the type of evidence necessary to strike down the statute. Nor is the fact that on one particular day 61 hotels advertised for tenants of any avail. Even if the percentage of vacancy claimed existed in 100% of New York City hotels, it would still fall short of the proof required. It is my recollection that it was observed on oral argument that vacancy rates approximating 17% were not uncommon even during World War II, and appellants do not attempt to contend that there was no emergency at that time. The bare 17.21% figure, taken without relation to any other circumstances, unsupported by any other substantial facts, and being a product of a survey of merely about 53% of hotel accommodations, can hardly be adequate to rebut the presumption referred to above, or to successfully disprove the express and recent declaration of an informed Legislature.
Finally, appellants complain that even if the commission had the power to classify housing accommodations on a rental basis, *217 it failed to give a detailed breakdown of the general classification by rent. While they do not indicate what they would have this court do, we think it must amount to a request that we remand the case with directions to the commission to be more specific in its opinion. Appellants cite no authorities in an attempt to support such a position and, indeed, respondents have not dignified the suggestion with a reply. We are clear that no such disposition may be made. The extent of our function, and the very purpose of this proceeding, is to review the correctness of the commission's decision, not to compel it to render an advisory opinion. It is incumbent now upon the petitioners to apply for decontrol, basing their claim upon a showing of a 5% vacancy in a particular rental level. When it shall demonstrate such facts, it will be time then for the commission to determine, under all the circumstances, whether the rental level chosen is proper, and their determination will be subject to review.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Order affirmed.