HENDRY, Judge.
Appeal is taken from a final summary judgment rendered adversely to National Construction Corporation of Florida (National), which seeks to recover a bad debt loss by recourse to a payment and performance bond issued by Travelers Indemnity Company (Travelers) to Progress Supply, Incorporated (Progress). National[1] argues that the lower court’s reading of the law upon which its summary judgment issued was erroneous; it argues alternatively that summary disposition of the case was inappropriate, because an unresolved question of material fact was validly raised. Appel-lees Travelers and Progress cross-appeal on the basis that their attorney fee award was legally inadequate. For the following reasons, we affirm on all issues raised.
Appellant was hired to haul fill to the site of a Miami-Dade public works project. Its immediate employer was South Florida Trucking Company (South Florida), a truck broker itself engaged by R.A.E. Contractors (R.A.E.). R.A.E. was a subcontractor of Progress, the general contractor. When South Florida failed to fully pay National for its services, National sought recourse to the bond executed by Progress and Travelers.
Such a bond, statutorily required for all state or local public works projects, § 255.05, Fla.Stat. (1979), serves much the same purpose as the Mechanics’ Lien Law, Sections 713.01-36, Florida Statutes, 1979, which is itself expressly inapplicable to projects on state-or local-governmentally-owned property. § 713.01(14), Fla.Stat. (1979). (Presently, by 1977 amendment, recovery under the bond is available to those persons qualifying as lienors under the Mechanics’ Lien Law. § 255.05, Fla.Stat. (1979). That amendment took effect on January 1, 1978. Ch. 77-81, § 2, Laws of Fla. However, all parties agree that our case is controlled by the law as it stood in 1977.) In 1977, payment under the contractor’s bond was assured to “all persons supplying him labor, material, and supplies, used directly or indirectly by the said contractor or subcontractors . . ..” § 255.05, Fla.Stat. (1977). Thus, by its terms, the statutory provision mandated bond protection only to those servicing contractors or subcontractors.[2] Moreover, Florida caselaw uniformly interpreted the statutory mandate quite narrowly, and denied recovery under the bond to those below the level of sub-subcontractors, or subcontractors’ ma-terialmen. Southwest Florida Water Management District ex rel. Thermal Acoustic Corp. v. Miller Construction Co. of Leesburg, 355 So.2d 1258 (Fla.2d DCA 1978); William H. Gulsby, Inc. v. Miller Construction Co. of Leesburg, 351 So.2d 396 (Fla.2d DCA 1977); North Broward Hospital District ex rel. Southern Insulation Corp. v. Crosewell, 188 So.2d 54 (Fla.2d DCA 1966); City of Fort Lauderdale ex rel. Bond Plumbing Supply, Inc. v. Hardrives Co., 167 So.2d 339 (Fla.2d DCA 1964) and Board of Public Instruction, Broward County ex rel. Monmouth Plumbing Supply Co. v. Rood Construction Co., 166 So.2d 701 (Fla.3d DCA 1964), citing federal cases similarly interpreting the Miller Act, 40 U.S.C. *255 § 270a, after which our § 255.05 was patterned.[3]
National would have us disaffirm those decisions on the ground that, in light of the subsequent statutory amendment, they represent a misinterpretation of the legislature’s original intent.
We recognize that
while the views of subsequent [legislatures] cannot override the unmistakable intent of the enacting one, . . . such views are entitled to significant weight, ... and particularly so when the precise intent of the enacting [legislature] is obscure.
Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596, 100 S.Ct. 800, 814, 63 L.Ed.2d 36, 54 (1980). However, the value of such subsequent legislative attention, insofar as it might cast light upon a prior legislative intent, diminishes over time, so that, while
[i]t is an accepted rule of construction that an amendment following soon after a controversy has arisen as to the interpretation of the original act may be construed as explanatory of the ambiguities from which such controversy arose .. .,
In re Honeoye Central School District, Town of Livonia v. Berle, 72 A.D.2d 25, 423 N.Y.S.2d 336, 342 (App.Div.1979),
the views of one [legislature] as to the construction of a statute adopted many years before by another [legislature] have “very little, if any, significance.”
United States v. Southwestern Cable Co., 392 U.S. 157, 170, 88 S.Ct. 1994, 2001, 20 L.Ed.2d 1001, 1012 (1968) (Harlan, J.).
The language limiting recovery to servi-cers of contractors and subcontractors had been unchanged since its adoption in 1963, Ch. 63-437, § 1, Laws of Fla.; the 1963 enactment was itself a restatement, rather than amendment, of terms adopted by the 1925 Legislature.[4]
We are not disposed to view the Legislature’s 1977 amendment as anything less that a clear divergence from prior law. Whatever its virtues, its retroactive application would be inappropriate.
National argues that, in any event, summary disposition of the case was inappropriate, because a genuine issue of material fact was timely raised. It contends that South Florida and that firm’s employer, R.A.E., were sufficiently interrelated to consider National’s status as that of supplier of services to R.A.E., rather than to South Florida. Such a finding would bring National within the purview of the bond’s coverage.
Unfortunately, the deposition which clearly raises this question of fact was not made a part of the record before the trial court at the time summary judgment was entered. That deposition, taken November 21, 1978, was not transcribed until January 25,1979, and was not submitted to the court until four days thereafter. Final summary judgment issued on December 13, 1978, and rehearing was denied January 11, 1979. Motion to Set Aside Summary Judgment, and Motion to Supplement the Record with the deposition were not made until January 26, 1979. Those motions were denied on February 9, 1979. National admits that denial of the two motions was properly within the discretion of the trial court, but contends that sufficient indicia of the purported relationship between South Florida and R.A.E. existed in the record, exclusive of the deposition, and that the pleadings adequately raised the question.
We must disagree. After careful scrutiny of the voluminous record, we find that *256 the question of fact was not raised until the ill-fated deposition was submitted to the court; the trial court was completely within the ambit of its authority in refusing to set aside its judgment, Schwab & Co. v. Breezy Bay, Inc., 360 So.2d 117 (Fla.3d DCA 1978); we must affirm.
Finally, we find the cross-appeal to be without merit.
Affirmed.

. Miami-Dade Water and Sewer Authority is a nominal co-appellant for the use and benefit of National, the actual party-at-interest.

. We note, by reference to the language contained in the bond instrument itself, that it provided coverage only for that group of claimants statutorily defined.

. The statutory language regarding “labor, material and supplies, used . .. indirectly” was construed to refer to such ingredients of the process of construction as are used up in that process, e. g., gasoline, as opposed to those ingredients physically incorporated into the final product. City of Fort Lauderdale ex rel. Bond Plumbing Supply, Inc., supra, 167 So.2d at 341.

. “[S]uch contractor, or contractors, shall promptly make payments to all persons supplying him, or them, labor, material and supplies, used directly or indirectly by the said-contractor, contractors, sub-contractor or sub-contractors in the prosecution of the work ... .” Ch. 10035, Laws of Fla. (1925).