OPINION OF THE COURT
Anthony J. Ferraro, J.
In an action for damages based on defendant’s alleged violation of the Truth in Lending Act (US Code, tit 15, § 1601 etseq.), defendant moves to dismiss the complaint as failing to state a cause of action (CPLR 3211, subd [a], par 7). Since issue has been joined, the motion is deemed one for summary judgment. (See Smith v Russell Sage Coll., 54 NY2d 185, 191.)
The sole issue on this motion is whether section 1666 of title 15 of the United States Code is applicable to any extension of consumer credit or only to open-end consumer credit plans (US Code, tit 15, § 1602, subd [i]), commonly known as credit card or charge card accounts.
The Fair Credit Billing Act added a number of provisions to the Truth in Lending Act (TILA) (Pub L 90-321, tit I, 82 US Stat 146). A primary provision, and the one at issue in this case, is subdivision (a) of section 161 (as added by 88 *163 US Stat 1512, US Code, tit 15, § 1666). This section applies whenever a creditor transmits to an obligor “a statement of the obligor’s account in connection with an extension of consumer credit” (US Code, tit 15, § 1666, subd [a]). If the obligor believes that the statement contains a billing error (see US Code, tit 15, § 1666, subd [b]), he then may send the creditor a written notice setting forth that belief, indicating the amount of the error and the reasons supporting his belief that it is an error. The section then provides for specific procedures to be followed by the creditor in responding to the claim of a billing error. A creditor’s failure to comply with these provisions will effect a forfeiture of his right to collect the first $50 of the disputed amount, including finance charges (US Code, tit 15, § 1666, subd [e]). In addition, section 1666 (subd [d]) of title 15 of the United States Code provides that, pursuant to regulations of the Federal Reserve Board, a creditor may not restrict or close a credit account due to an obligor’s failure to pay a disputed amount until the creditor has given a written explanation of the disputed bill under section 1666 (subd [a], par [3], cl [B]) of title 15. (See American Express Co. v Koerner, 452 US 233, 235-237.) Finally, noncompliance by a creditor with any of the above requirements will expose the creditor to civil liability for damages under section 1640 of title 15 of the United States Code, the section under which plaintiff now sues.
Defendant claims that the requirements under section 1666 of title 15, however, are inapplicable to the facts and circumstances of this case. The sole ground for this argument is that section 1666 of title 15 is strictly limited to open-end consumer credit plans and does not establish procedures for billing disputes that may arise in any or all consumer debtor-creditor situations. Consequently, since the instant credit transaction is concededly not an open-end consumer credit plan transaction, defendant argues that it had no obligation to comply with section 1666 of title 15 of the United States Code, and, thus, as a matter of law, cannot be cast in damages by reason of section 1640 of title 15. The court agrees.
The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature. (McKinney’s Cons Laws of *164 NY, Book 1, Statutes, § 92.) Courts are constitutionally obligated to determine the expressed will of the Legislature, and legislative intent must be first sought in the language of the statute under consideration. (See Drelich v Kenlyn Homes, 86 AD2d 648.) In doing so, a statute or legislative act is to be construed as a whole, and all of its parts are to be read and construed together (McKinney’s Cons Laws of NY, Book 1, Statutes, § 97; People v Mobil Oil Corp., 48 NY2d 192), and harmonized with each other as well as with the general intent of the whole enactment. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 98; Matter of Honeoye Cent. School Dist. v Berle, 72 AD2d 25.)
Where, however, after a reading of the statute, its meaning is still not clear, courts must search for legislative intent in the purpose of the enactment, and from such facts and through such rules as may, in connection with the language, legitimately reveal it. (Matter of Schwartz v Lefkowitz, 21 AD2d 13.) To this end, it has been held that in the judicial construction of statutes it is relevant to consider the history of an act. Indeed, the purpose and applicability of a statute should be based on a consideration of its legislative history, and it has been held that legislative history is not to be ignored, even if words be clear. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 124, and cases cited therein.)
The Fair Credit Billing Act (US Code, tit 15, § 1666) does not expressly limit its application to open-end credit transactions. That is, there is no clear and unambiguous language in the statute stating that the procedures established thereby are solely for the correction of billing errors relating to such open-end transactions. Nevertheless, the statute reads in relevant part: “If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor’s account in connection with an extension of consumer credit, receives at the address disclosed under section 1637(b)(10) of this title a written notice * * * indicating] the obligor’s belief that the statement contains a billing error * * * the creditor shall [take certain specified steps]”. (US Code, tit 15, § 1666, subd [a], par [2]; emphasis added.) A billing error notice, as indicated by the emphasized language of the statute, is to be sent to the creditor’s *165 address as disclosed under section 1637 (subd [b], par [10]) of title 15 of the United States Code. Section 1637 establishes disclosure rules for open-end consumer credit plans only. Subdivision (b) of that section requires that the creditor of any account under an open-end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth, inter alia, the address to be used by the creditor “for the purpose of receiving billing inquiries from the obligor.” (US Code, tit 15, § 1637, subd [b], par [10].) The following section, section 1638 of title 15 (“Transactions other than under open end credit plan”) has no comparable requirement for billing cycle statements, nor the disclosure of an address for the receipt of billing inquiries by the creditor. Disclosure under section 1638 is, by the terms of that section, contemplated as a single act performed at the time of “each consumer credit transaction other than under an open end credit plan” (US Code, tit 15, § 1638, subd [a]), and is not viewed as ongoing, since only an open-end credit plan would afford a reason and opportunity for ongoing disclosure due to periodic billings for repeated transactions (see US Code, tit 15, § 1602, subd [i]). Subdivision (a) of section 1666, therefore, read in conjunction with section 1637, and by its reference to section 1637 alone, expresses a legislative intent to enact rules regarding the correction of billing errors in open-end consumer credit transactions only. Moreover, since there is a separate section with regard to consumer credit transactions other than open-end credit plans (§ 1638), and no reference is made to that section or any other section concerning such transactions by the provision of section 1666 relating to the commencement of billing error inquiries, an irrefutable inference must be drawn that section 1666 applies only to open-end credit plans. Such an inference obtains under the rule of statutory construction, expressio unius est exclusio alterius. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 240; Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 345; Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208-209.)
Finally, the legislative history of the Fair Credit Billing Act (US Code, tit 15, § 1666 et seq.) shows that it amended *166 the Truth in Lending Act for the purpose of protecting the consumer against “unfair and inaccurate credit billing and credit card practices.” (1974 US Code Cong & Administrative News, pp 6119, 6152.) Pursuant to the Fair Credit Billing Act, the Federal Reserve Board was directed to issue regulatory rules for the implementation of the act. In September, 1975, the Board issued amendments to Regulation Z, which implements the Truth in Lending Act. In an explanation of those amendments, the Board stated: “The chief purpose of the Fair Credit Billing Act and of the new Federal Reserve Regulation, is to help consumers resolve credit billing disputes promptly and fairly. The Act prohibits certain practices deemed unfair to consumers using credit cards or other open-end credit accounts and certain practices between credit card issuers and retail merchants deemed to be anticompetitive.” (Emphasis added.) The specific section of Regulation Z that implements section 1666 of title 15 is section 226.14 — “Billing errors — resolution procedure” (12 CFR 226.14). 12 CFR 226.14 (g) clearly and unequivocally states: “This section does not apply to credit other than open end, whether or not a periodic statement is mailed or delivered, unless it is consumer credit extended on an account by use of a credit card.” (Emphasis added.) The Federal Reserve Board, therefore, has, since its implementation of the Fair Credit Billing Act in 1975, consistently interpreted the billing error correction procedure as being applicable only to open-end credit transactions, and, chiefly, to credit card accounts.
The Fair Credit Billing Act was amended in 1980 by the Truth in Lending Simplification and Reform Act (94 US Stat 132, tit VI). When the 96th Congress was considering this reform legislation, it had before it Regulation Z of the Federal Reserve Board. In fact, the legislative history of the 1980 act makes specific reference to Regulation Z and demonstrates that the Congress gave careful consideration to its provisions (1980 US Code Cong & Administrative News, pp 236,269-270). Consequently, the court must infer that, not having taken the opportunity to overrule or otherwise limit the Federal Reserve Board’s interpretation in Regulation Z of section 1666 of title 15 of the United *167 States Code (the billing error correction procedure) as being applicable to open-end credit transactions only, Congress intended not to disturb the Board’s statutory interpretation and, by implication, adopted it. (Matter of Lockport Union-Sun v Preisch, 7 AD2d 502, revd on other grounds 8 NY2d 54; see Helvering v Reynolds Co., 306 US 110; Matter of Gilmore v Preferred Acc. Ins. Co., 283 NY 92; see, also, National Elevator Ind. v New York State Tax Comm., 49 NY2d 538; Matter of Hotel Assn. v Weaver, 3 NY2d 206.)
Wherefore, the court holds that section 1666 of title 15 is only applicable to transactions under open-end credit plans, as defined by section 1602 (subd [i]) of title 15 of the United States Code; that, since the transaction in suit was not under such a credit plan, defendant was not obligated to comply with the billing error correction procedures of section 1666 of title 15; that defendant’s noncompliance therewith could not serve as a basis for civil liability under section 1640 of title 15, and, since section 1640 is the sole basis for liability herein, that the complaint has, therefore, failed to state a cause of action.
Accordingly, motion granted in its entirety; summary judgment dismissing the complaint and action granted, and the complaint and action are dismissed.