513 A.2d 912

Jerry **BAILEY**

v.

**CAPITOL MOTORS, INC. et al.**

No. 145, Sept. Term, 1985.

Court of Appeals of Maryland.

Aug. 27, 1986.

Barry J. Dalnekoff (Mark E. Mason, on brief), Annapolis, for appellant.

Patricia M. Flannery (Frank J. Vecella and Anderson, Coe & King, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH,* EL-DRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

RODOWSKY, Judge.

In this appeal we hold that the federal Fair Credit Billing Act (FCBA) does not apply to a transaction under a typical Maryland retail installment sale agreement.

On July 30, 1981, appellant, Jerry Bailey, and his daughter, Pamela Bailey, purchased, on credit, a used automobile from Capitol Motors, Inc. The original terms of the sale are evidenced by a retail installment sale agreement under which the finance charge, stated as a sum in dollars, was added to the unpaid balance to arrive at the total of payments which the buyers promised to pay in thirty monthly installments, at a specified dollar amount each, beginning September 1, 1981. Capitol Motors, Inc. assigned the contract to the appellee, Chrysler Credit Corporation (Credit Corp.). The seller unsuccessfully attempted to repair defects in the automobile and eventually the parties agreed to rescind the sale. Thereafter Credit Corp. reported to two consumer credit reporting agencies that the automobile had been voluntarily repossessed.

Jerry Bailey, his wife Constance, and Pamela Bailey then brought the instant, multiple claims action. We are concerned here only with the claim asserted by Jerry and Constance which alleged that Credit Corp. had violated the FCBA by reporting the rescission as a voluntary repossession and on which the plaintiffs obtained a jury verdict for money damages against Credit Corp. On that claim the circuit court entered judgment n.o.v. in favor of Credit Corp., and Jerry Bailey timely appealed from that judgment. We issued the writ of certiorari on our own motion

---

* SMITH, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

prior to consideration of the case by the Court of Special Appeals.

P.L. 93–495 of October 28, 1974, the FCBA, made a number of amendments to the federal Truth-in-Lending Act, principal among which are the provisions codified at 15 U.S.C. §§ 1666 through 1666j (1982) under the heading, "Credit Billing." Appellant does not contend that there was any evidence that the transaction involved here included the use of a credit card. Consequently the issue before us may be simply stated to be whether § 1666(a) and (b) and § 1666a are limited to open-end consumer credit transactions, as the circuit court ruled as a matter of law, or whether those particular sections also embrace a closed-end consumer credit transaction which is the type of transaction entered into by the appellant with Credit Corp.[1] 15 U.S.C. § 1604 authorizes the Board of Governors of the Federal Reserve System to adopt regulations implementing the federal Truth-in-Lending and Fair Credit Billing Acts. These regulations, known as Regulation Z, are codified at 12 C.F.R. § 226.1 *et seq.* (1986). Regulation § 226.2(a)(20) defines "open-end credit" as

consumer credit extended by a creditor under a plan in which:

(i) The creditor reasonably contemplates repeated transactions;

(ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and

(iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid.

---

**1.** Because this case does not involve the use of a credit card we shall, for purposes of simplicity, assume in the discussion that no closed-end consumer credit transaction ever involves a credit card and that all consumer credit employing a credit card is open-end. We shall use the terms "open-end" and "closed-end" on those assumptions.

"Closed-end" credit is consumer credit other than open-end credit. Reg. 226.2(a)(10).

Appellant contends that the obligations which Credit Corp. failed to perform are imposed under §§ 1666(a) and 1666a. The former in relevant part provides:

> If a creditor, within sixty days after having transmitted to an obligor a statement of the obligor's account in connection with an extension of consumer credit, receives at the address disclosed under [15 U.S.C. § 1637(b)(11) ] a written notice ... that the statement contains a billing error,

then the "creditor" has certain obligations, essentially either to correct the error or explain the creditor's position.

Section 1666(b) provides that a "billing error" consists of any of the following:

> (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
>
> (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.
>
> (3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.
>
> (4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.
>
> (5) A computation error or similar error of an accounting nature of the creditor on a statement.
>
> (6) Any other error described in regulations of the Board.

Section 1666a imposes certain obligations with respect to credit reports on a "creditor" with respect to "an obligor."

Here there is no dispute that Credit Corp. extended consumer credit and that the unqualified words, "creditor" and "obligor," are broad enough to include the parties to a closed-end credit transaction. Appellant compares the way

Congress drafted the above-referenced sections with the wording of §§ 1666b through 1666i which also impose obligations. The latter sections specifically refer either to open-end consumer credit or to transactions in which there is a credit card issuer and a cardholder. From this contrast appellant concludes that Congress intended that § 1666(a) and (b) and § 1666a include closed-end credit.

There is some internal evidence in the language of the very sections relied upon by appellant that Congress did not intend to include closed-end credit. More important, the implementing regulations make it unmistakeably clear that only open-end credit was intended to be included in the provisions relied on by appellant.

Internally, § 1666(a) contemplates that the creditor will receive the notice of billing error at the creditor's address disclosed under § 1637(b)(11). Section 1637 deals exclusively with open-end credit plan disclosures. Subsection (b) thereof requires the creditor operating such a plan to "transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account ... a statement setting forth [11] items to the extent applicable[.]" The eleventh item, which was added by the FCBA, 88 Stat. 1511 (1974), requires the statement to contain "[t]he address to be used by the creditor for the purpose of receiving billing inquiries from the obligor."

Portions of Regulation Z considerably flesh out the FCBA. The Supreme Court has said that "Regulation Z of the Federal Reserve Board includes detailed rules applying [15 U.S.C. § 1666(a)], and the regulation is entitled to substantial deference." *American Express Co. v. Koerner*, 452 U.S. 233, 242 n. 10, 101 S.Ct. 2281, 2287 n. 10, 68 L.Ed.2d 803, 811 n. 10 (1981), citing *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

The initial regulations under the FCBA were published in final form in 40 Fed.Reg. 43200–210 (1975), to be effective October 28, 1975. The introductory statement said in part:

The major provisions of the regulation provide:

1. A procedure to be used in attempting to correct alleged billing errors in open end credit accounts. [*Id.* at 43201.]

The initial regulation included in § 226.14, headed, "Billing errors—resolution procedure," subsection (g), *"Exceptions to general rule,"* the following:

This section does not apply to credit other than open end, whether or not a periodic statement is mailed or delivered, unless it is consumer credit extended on an account by use of a credit card. [*Id.* at 43210; 12 C.F.R. § 226.14(g) (1976).]

Regulation Z is now codified at 12 C.F.R. § 226.1 *et seq.* (1986). It was completely revised to its present form as of April 1, 1981. *See* 46 Fed.Reg. 20848–970 (1981). Regulation Z is now divided. into four subparts, "A—General," "B—Open-End Credit," "C—Closed-End Credit," and "D—Miscellaneous." *See* 12 C.F.R. Part 226 (1986) at 653. Regulation § 226.13 deals with "Billing error resolution" and is part of subpart B. Regulation § 226.1(d)(2) states that "Subpart B contains the rules for open-end credit."

From the enactment of the FCBA, the regulations implementing the statutory provisions relied on by the appellant have expressly defined the scope as limited to open-end credit. Had the Board of Governors of the Federal Reserve System misconstrued the intent of the FCBA, Congress has had more than a decade to correct the error. Congress has not done so.

Regulation § 226.13(a) now sets forth seven kinds of errors or omissions constituting a "billing error." The regulation deals exclusively with billing errors connected with "a periodic statement." Periodic statements are treated in subpart B of Regulation Z in § 226.5(b)(2) and in § 226.7 where the expression is used to describe cyclical

billing under an open-end credit plan. The statute, in § 1666(b), speaks of billing errors on a "statement." While it is difficult to conceive of just what a "statement" might be if 15 U.S.C. § 1666(b) included closed-end credit as the appellant contends, Regulation Z sharpens the language and clarifies that "statement" means a "periodic statement."

There is but one judicial decision precisely on the point which the appellant raises. *Jacobs v. Marine Midland Bank, N.A.,* 124 Misc.2d 162, 475 N.Y.S.2d 1003 (Sup.Ct. 1984) holds that § 1666 is inapplicable to closed-end credit transactions, based largely on the Regulation Z implementation.

The staff of the Federal Reserve Board also issues informal opinions to assist credit grantors in complying with the Truth-in-Lending Act and the FCBA. In letters dated October 31, 1975, the staff opined that the original regulations implementing the FCBA apply to all open-end creditors. There was no mention of closed-end credit transactions. *See* Correspondence Nos. 935 and 936, Consumer Cred. Guide (CCH) ¶¶ 31,274 and 31,275.

The commentators are also in accord. J. Fonseca, *Consumer Credit Compliance Manual* § 3:1(A) (2d ed. 1984) introduces his discussion of the FCBA by saying:

> The Federal Consumer Protection Act includes a section on Fair Credit Billing, to help consumers resolve credit billing disputes promptly and fairly. The section and accompanying regulations apply only to open end credit, such as credit card and cash reserve accounts.

1 R. Clontz, *Truth in Lending Manual* ¶ 4.05[2][b] (5th ed. 1982) concludes:

> Prior Reg. Z § 226.14(g) provided that the billing error resolution procedures were inapplicable to closed-end credit, whether or not a periodic statement was mailed or delivered, unless the credit constituted consumer credit extended on an account by use of a credit card. For some undisclosed reason, a similar provision was not furnished

in Rev.Reg. Z § 226.13. Based upon the author's study of the FCBA and revised Regulation Z, the credit resolution procedures will now be fully applicable to all types of open-end consumer credit. Further, the procedures will be applicable in all respects as to credit card issuers, even though the card is used in closed-end credit and whether or not the payment of a Finance Charge is or may be required as long as consumer credit is extended by the use of a credit card. Other than for credit card transactions, the procedures are totally inapplicable to closed-end consumer credit. Thus, "daily Finance Charge closed-end credit sale and/or consumer loan plans" are not subject to the billing error resolution procedures.

The circuit court was correct in ruling as a matter of law that Credit Corp.'s transaction with the appellant was not within the FCBA.

JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT, JERRY BAILEY.