OPINION OF THE COURT
Cooke, J.
On March 7, 1974, plaintiff Anna Northrup was granted a judgment of divorce from defendant Ray A. Northrup Sr. Defendant was awarded custody of the children of the marriage, but was also ordered to pay alimony to plaintiff in the sum of $160 per month. After making two payments, defendant defaulted and, on August 19, 1974, plaintiff moved to hold him in contempt and for a judgment for unpaid arrears. Defendant cross-moved for an order modifying the judgment of divorce to eliminate the provision for alimony.
The basis for defendant’s cross motion is section 248 of the Domestic Relations Law which provides, in relevant part, as follows: "The court in its discretion upon application of the husband on notice, upon proof that the wife is habitually living with another man and holding herself out as his wife, although not married to such man, may modify such final judgment and any orders made with respect thereto by annulling the provisions of such final judgment or orders or of both, directing payment of money for the support of such wife.”
A hearing was held on defendant’s contention that he should no longer be required to pay alimony in view of the fact that his former wife was living openly and notoriously with another man. Based on uncontradicted evidence, the hearing court found that, from March 7, 1974 to September 19, 1974, plaintiff lived with Douglas Prentice, not her husband, shared the same bedroom with him, cooked meals, did his wash, permitted him to use her car, and shared household expenses with him. It was also determined that there was no evidence that plaintiff ever stated to anyone that she was married to Prentice.
*570 Supreme Court concluded that the evidence overwhelmingly established that plaintiff was habitually living with another man not her husband, and then focused upon the meaning of the phrase "holding herself out as his wife, although not married to such man” in section 248 of the Domestic Relations Law. Reasoning that the Legislature did not intend the continued payment of alimony to be dependent merely upon statements or representations made by a former wife, it construed the statute to mean "statements or conduct which would lead a person to believe that the parties are living and associating as husband and wife.” On this analysis, the provision for alimony was eliminated. However, defendant was held in contempt for his prior failure to make alimony payments, fined in the sum of his arrears, and ordered to pay plaintiff’s counsel $300 as fees for his services.
The Appellate Division unanimously affirmed, stating that there was sufficient proof that plaintiff held herself out as the wife of the man with whom she was living. Underlying this determination was its legal conclusion that section 248 of the Domestic Relations Law does not require the husband to prove that his former wife made affirmative representations to third parties that she and her paramour were married. Instead, it was held that cohabitation in what might be reasonably considered a marital relationship is sufficient to satisfy the statutory predicate. This decision was in error and, accordingly, the order appealed from should be reversed.
 The issue is purely one of statutory construction. The courts of this State have no common-law jurisdiction over divorce or its incidents. The power to modify a provision for alimony is only such as is conferred by statute (Waddey v Waddey, 290 NY 251, 253; Erkenbrach v Erkenbrach, 96 NY 456, 462-463). Indeed, early cases held that, in the absence of statutory authority, the court had no right to terminate the wife’s alimony on the ground that she had remarried (Shepherd v Shepherd, 1 Hun 240, affd 58 NY 644; see, generally, Alimony—Effect of Remarriage, Ann., 48 ALR2d 270, 289-291). That bar, of course, has long since been eliminated by statute (see Domestic Relations Law, § 248 [first sentence]). However, even immoral conduct will not permit the court to make a modification unless the type of conduct engaged in is contemplated by the statutory language (see Hayes v Hayes, 220 NY 596; 2 Foster-Freed, Law and the Family, § 26:19).
This case illustrates the statutory distinction between *571 “habitually living with another man”, on the one hand, and "holding herself out as his wife”, on the other. This is a two-part test. The absence of proof in a particular case does not justify an inference that cohabitation alone manifests a holding out.
The hearing court was concerned that the statute might be circumvented by a woman who openly proclaims that she is not married to the man with whom she is living. Hence, it examined the conduct of plaintiff and Prentice. But none of the actions exhibited by plaintiff constitute a "holding out”. In other contexts, a holding out is said to require "some assertive conduct” (People v Shokunbi, 89 111 App 2d 53, 58 [holding one’s self out as a physician]). However, this does not mean that there must be some statement such as "I am his wife”, although assertions such as this would be sufficient proof. To be sure, conduct may constitute a holding out. For example, one court has held that a woman holds herself out as a man’s wife by these actions: (1) applying for a telephone, designating him as her spouse and asking that she be listed in the directory with his surname; and (2) changing the names on their joint checking account so that she uses his surname (Lang v Superior Ct. of Los Angeles County, 53 Cal App 3d 852). These examples are not meant to suggest a limitation on the type of proof required, but simply to illustrate the types of conduct which might demonstrate a holding out. Here, there has been no such showing. There is no evidence here other than that plaintiff for six months habitually lived with another man. This is not enough.
The statute may .indeed be circumvented where the woman negates any inference that she is holding herself out as married (see Stern v Stern, 88 Misc 2d 860, 864). To be disapproved, however, are holdings that, in the absence of efforts to show that the parties are not man and wife, the "life style” of the parties constitutes a "holding out” (see Matter of Anonymous, 90 Misc 2d 801, 804). The fact that a woman may avoid the loss of alimony by tailoring her conduct should not be surprising. The forerunner (L 1938, ch 161) to the present statute was specifically enacted to counteract a situation where a woman, who represented that she was married to the man with whom she was living, was held entitled to alimony because she had not, in fact, remarried (see Citron v Citron, 91 Misc 2d 785 [discussion of legislative history]). The statute thus imposes two requisites for the termination of alimony in *572 the absence of remarriage: (1) habitually living with a man, and (2) holding herself out as his wife. The courts are without power to modify merely on proof of one.
This court is not bound by the finding of the courts below that there was a holding out. The facts are undisputed. The issue before us is the legal conclusion to be drawn from that which has been found. We conclude that, as a matter of law, defendant has failed to establish that plaintiff held herself out as married to another man (cf. Cohen and Karger, Powers of the New York Court of Appeals, § 108, pp 452-453). That individuals may conform to the life style of a married couple is not enough.
The fact of the matter is that section 248 of the Domestic Relations Law, as presently drafted, does not authorize a court to terminate a provision for alimony merely upon a showing that an ex-wife is living with another man. The court cannot extend the reach of the statutes (see, e.g., Leffler v Leffler, 50 AD2d 93, affd 40 NY2d 1036 [section 248 held inapplicable to separation agreements]; Wechter v Wechter, 50 AD2d 826, affd 40 NY2d 964 [grounds for divorce are limited to those set forth in section 170]). Change, if deemed advisable, must come from the Legislature.
Accordingly, the order of the Appellate Division, should be reversed, with costs, and defendant’s cross motion to modify the decree of divorce denied.