OPINION OF THE COURT
Alexander, J.
 A former husband who seeks to terminate his support obligations pursuant to Domestic Relations Law § 248 by alleging that his former wife is cohabiting with another man must demonstrate both cohabitation and conduct by the former wife amounting to a "holding out” that she is married to *385 her paramour. Accordingly, in Matter of Bliss v Bliss there should be a reversal and in Matter of Collyer v Proper an affirmance.
I
Virginia and Richard Bliss were married in New York in 1955. Four children were born of the marriage which ended in 1970 with the entry of a judgment of divorce in Connecticut Superior Court. The judgment directed Richard Bliss to pay $640 per month to Virginia Bliss as alimony. Soon after the divorce, Virginia Bliss and her children moved into the nearby home of Thomas Fleming. She and Fleming shared the master bedroom and Fleming participated in all family activities, including attending the children’s school functions and participating in holiday activities. Virginia Bliss did not change her name nor portray herself as married to Fleming. This relationship continued on a somewhat on-again-off-again basis over time, with Mrs. Bliss at one point telling her ex-husband to discontinue alimony payments, only to request their resumption a few months later because she could "no longer live without the alimony”. She later requested that Bliss take custody of the two younger children because she "was having a hard time and couldn’t get a new life in taking care of the children”. In 1977, she moved to Florida "to build a new life” but remained there only for approximately one year. Fleming neither accompanied her to Florida nor visited her during that time. From Florida, Virginia Bliss relocated to Maine to live with Mr. Fleming on property they previously had purchased jointly. They resided in a winterized "barn” on the Maine property until November 1979 when she moved to the Bahamas to live and work with her parents. Again, Fleming did not visit her while she was living in the Bahamas. However, she returned to the Maine property in May 1980 and resumed living with Fleming in the "barn”. In October 1981, Bliss moved into a house on adjoining property belonging to her mother, but has continued to maintain a sexual and social relationship with Fleming. He takes his meals with her three or four times a week and pays her approximately $25 per week for those weeks when he eats at her house. They continue to pay the taxes on the jointly owned property in equal shares.
Richard Bliss stopped paying the required alimony in the summer of 1982. In April of 1983, Virginia Bliss commenced *386 this proceeding pursuant to Domestic Relations Law article 3-A (Uniform Support of Dependents Law) to enforce the alimony provision of the Connecticut divorce judgment. Richard Bliss asserted as a defense that the alimony provision should be annulled pursuant to Domestic Relations Law § 248 because petitioner had habitually lived with another man for various and extended periods over the past 14 years. Family Court granted the petition, finding that respondent had not met his burden of establishing that Virginia Bliss, through her conduct, had held herself out to be another man’s wife. A unanimous Appellate Division reversed, finding that Mrs. Bliss "clearly took on all of the accoutrements of married life with Fleming” and therefore that the "two-prong test of section 248 is satisfied” (107 AD2d 394, 396).
II
Kay C. Collyer and Robert B. Proper were married in 1954 and divorced in 1978. The divorce judgment incorporated, but did not merge with the terms of a stipulation entered on the record in open court between the parties wherein it was provided, that "alimony would cease upon the remarriage of the plaintiff or in the event that within the meaning of the Domestic Relations Law that such circumstances exist parallel to a marriage and in that event alimony would cease.” Subsequent to the divorce, Mrs. Collyer moved to Florida, where she shared a one-bedroom apartment with its owner, Angelo Trenga until August 1985. It appears from the record that she maintained her own checking account, provided her own health insurance and paid her share of the household expenses during the time she resided with Trenga. On an infrequent basis, as her finances allowed, she would pay some $200 a month to Trenga for rent. Both of their names appeared on the mailbox at their apartment building and they maintained separate listings in the telephone directory. Although they vacationed together on occasion, there is no evidence that she ever portrayed herself as married to Trenga.
In the summer of 1983, Tricia, an unemancipated daughter of the Proper marriage, who had been living in Cobleskill with her father, relocated to Florida to live with an older married sister. In October 1983, because of Tricia’s relocation, Mrs. Collyer commenced a proceeding pursuant to Family Court Act article 4 seeking an upward modification of child support. Mr. Proper counterclaimed, seeking a downward modification *387 of maintenance and/or support due to a "substantial change in circumstances” occurring since the entry of the judgment of divorce. Specifically, Proper sought to terminate all support payments because the provisions of the stipulation and decree authorized such termination "in the event that within the meaning of Domestic Relations Law * * * such circumstances exist parallel to a marriage”. Family Court denied both the petition for upward modification of the support and the counterclaim to terminate the alimony payments, holding that no adequate basis for an upward modification had been demonstrated and that Proper had not satisfied the two-pronged standard of Domestic Relations Law § 248 requiring both a "living together” and a "holding out”. Upon cross appeals to the Appellate Division, that court unanimously affirmed. Robert Proper appeals pursuant to leave granted by this court.
Ill
Domestic Relations Law § 248 states in relevant part: "The court in its discretion upon application of the husband on notice, upon proof that the wife is habitually living with another man and holding herself out as his wife, although not married to such man, may modify such final judgment and any orders made with respect thereto by annulling the provisions of such final judgment or orders or of both, directing payment of money for the support of such wife.”
We have previously held in Northrup v Northrup (43 NY2d 566), where a former husband sought to annul his alimony obligations because his former wife lived with a man "not her husband, shared the same bedroom with him, cooked meals, did his wash, permitted him to use her car, and shared household expenses with him” (43 NY2d, at p 569), that the clear language of the statute "imposes two requisites for the termination of alimony [to a former wife] in the absence of remarriage: (1) habitually living with a man, and (2) holding herself out as his wife” (id., at pp 571-572). We concluded that evidence that the former wife had "habitually lived with another man” and that "the individuals may conform to the life style of a married couple is not enough” (id., at p 572) to satisfy this two-pronged test. There must be in addition, some objective evidence of a "holding out” by the former wife that she is not the wife of the other man.
Neither of these appeals present sufficient evidence that the former wives were holding themselves out as another man’s *388 wife. Absent such a showing, courts have no power under Domestic Relations Law § 248 to modify or annul support obligation. In Northrup we said that " 'some assertive conduct’ ” must be demonstrated to warrant a finding of "holding out” (43 NY2d, at p 571, citing People v Shokunbi, 89 Ill App 2d 53, 58, 232 NE2d 226), and noted illustrative situations such as where a woman is listed in a telephone directory or on the couple’s joint checking account using the man’s surname (43 NY2d, at p 571, citing Lang v Superior Ct., 53 Cal App 3d 852, 126 Cal Rptr 122). Other illustrations of the kind of assertive conduct necessary to satisfy the holding out requirement can be found in Matter of Paul S. v Roberta S. (91 Misc 2d 211), where the ex-wife shared a cooperative apartment with her paramour and the application for the apartment had been signed by them as husband and wife. Additionally, the woman in that case adopted the man’s surname on her W-2 forms and driver’s license, and indicated on her employment records that she was married to him (91 Misc 2d, at p 212). The proof required to demonstrate a holding out is, of course, not limited to the above illustrations. What is clear, however, is that cohabitation alone is insufficient as a matter of law.
In Bliss, the fact that Virginia Bliss’s relationship with Fleming has continued over some 14 years, and that early in the relationship he participated in what may be characterized as family activities are not sufficient to establish a holding out. The record does not reveal any conduct by Mrs. Bliss, either through direct action or by implication, indicating that she ever wished anyone to believe that she was married to Fleming nor does the evidence support such a belief. She was always referred to as "Mrs. Bliss”, and she lived in a different State and in a different country for periods of time. Similarly, the uncontroverted facts in Collyer ineluctably lead to the conclusion that Mrs. Collyer never held herself out to be Mr. Trenga’s wife.* Quite the contrary, she maintained her own checking account and health insurance and at various times paid money to Trenga to be applied to the rent for the apartment which stood in his name alone.
The Northrup decision was based on the plain language of *389 Domestic Relations Law § 248. "In the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give each a distinct and separate meaning” (McKinney’s Cons Laws of NY, Book 1, Statutes § 231). The statutory language clearly mandates discrete findings of cohabitation and holding out.
We acknowledged in Northrup that "[t]he statute may indeed be circumvented where the woman negates any inference that she is holding herself out as married * * * The fact that a woman may avoid the loss of alimony by tailoring her conduct should not be surprising”. (43 NY2d, at p 571.) We concluded however, that "[t]he fact of the matter is that section 248 of the Domestic Relations Law, as presently drafted, does not authorize a court to terminate a provision for alimony merely upon a showing that an ex-wife is living with another man” (id., at p 572). Thus, the fact that the construction of the statute compelled by the plain meaning of its language may, in some instances, "convert the shield of the statute into a sword of inequity, dependent only upon the deftness with which a former spouse can parry assertions that her conduct in a protracted relationship is marital in substance” (Matter of Bliss v Bliss, 107 AD2d 394, 397) is a matter to be addressed by the Legislature and not by the courts. "[T]he courts of this State have no common-law jurisdiction over divorce or its incidents. The power to modify a provision for alimony is only such as is conferred by statute. * * * The court cannot extend the reach of the statutes * * * Change, if deemed advisable, must come from the Legislature” (Northrup v Northrup, 43 NY2d, at pp 570, 572, supra).
We note the numerous unsuccessful attempts following the Northrup decision to amend the language of Domestic Relations Law § 248. (See for example, 1978 NY Legis Rec and Index, Senate Intro No. 7144, Assembly Intro No. 11474; 1985 Senate Intro No. 769, 1985 Assembly Intro No. 1824; Steinberg v Steinberg, 46 AD2d 684, 685), and conclude therefrom that our determination is not contrary to the intent of the Legislature.
The order of the Appellate Division in Bliss therefore should be reversed and the order of Family Court, New York County, reinstated. The order of the Appellate Division in Collyer should be affirmed.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye and Titone concur.
*390 In Matter of Bliss v Bliss: Order reversed, with costs, and order of Family Court, New York County, reinstated.
In Matter of Collyer v Proper: Order affirmed, with costs.

 Mr. Proper’s argument that Domestic Relations Law § 248 is inapplicable because of the stipulation entered into by the parties is belied by the words of the stipulation that specifically refer to the Domestic Relations Law as the standard to be applied in determining "circumstances * * * parallel to a marriage”.