OPINION OF THE COURT
Albert M. Rosenblatt, J.
Plaintiff husband[1] seeks to terminate support payments pursuant to a written separation agreement which contains the following provision: "Support payments shall terminate upon the Wife’s remarriage or if the Wife takes up residency with another man to whom she is not married.” (Emphasis court’s.)
The defendant wife acknowledges that she does indeed live primarily at the residence of another man, who is 97 years old, blind, and otherwise infirm. He requires defendant’s paid services as a live-in aide, for which she receives $160 a month, *797 plus room and board. It is also undisputed that the man cannot ambulate without a walker, and that he has a pacemaker, a hearing aid, a truss for his rupture, and a leg brace.
There is no claim or evidence that the relationship is personal, romantic, or anything other than professional. The wife has her own bedroom at the employment premises. Her job entails housekeeping, preparing her employer’s food, and keeping his blood pressure and temperature records.
None of this is seriously in dispute. As Special Term found, in ordering a hearing, the nature of the relationship is undenied and therefore established.
The parties, at the hearing, agreed that the only issue before the court was whether the husband and wife, in negotiating the separation agreement, intended the above-quoted provision to cover the relationship between the wife and her charge.
Both sides have cited Domestic Relations Law §248. That section provides that a court has discretion to annul the support provisions of a final matrimonial judgment upon proof that a spouse is habitually living with another partner and "holding * * * out” the relationship as one of husband and wife. Because such provisions work a forfeiture of support, a party seeking to be absolved from making payments must bear the burden of proof (Collyer v Proper, 109 AD2d 1010, affd, 66 NY2d 382; Smith v Smith, 88 AD2d 658; Zipparo v Zipparo, 70 AD2d 616). Thus, under section 248 there is a double predicate before support may be terminated. The showing requires (1) an habitual living arrangement, and (2) a "holding out” as a spouse (Northrup v Northrup, 43 NY2d 566). There has been some judicial concern over the arguably rigid second predicate, which might motivate a spouse to tailor conduct so as to scrupulously avoid the "holding out,” while fully satisfying the first test (Northrup v Northrup, 43 NY2d 566, 572, dissenting opn Wachtler, J. [now Chief Judge]). This concern has, no doubt, accounted for the decision in Matter of Bliss v Bliss (107 AD2d 394), in which the court was more inclined to look to conduct than to artificialities or labels in determining what constitutes a "holding out.” The plaintiff husband has cited the Appellate Division decision in Bliss, but it has since been reversed by the Court of Appeals (66 NY2d 382, supra). In any case, even the cogent viewpoint of the Appellate Division is of no avail to the husband at bar. It merely argues that section 248 was not intended to be used *798 as a "sword of inequity, dependent only upon the deftness with which a former spouse can parry assertions that her conduct in a protracted relationship is marital in substance.” (107 AD2d, at p 397.)
The husband has contended that the parties, in drafting the separation agreement, eschewed direct reference to section 248 because he insisted on holding his wife to a more stringent standard of nonalignment with another man. The court finds that he indeed did so by eliminating the second prong of section 248 so that the wife’s cohabiting with another man, without more, would be enough to terminate support.
We recognize, as do the parties, that termination of support under Domestic Relations Law § 248 is discretionary with the court (Northrup v Northrup, 43 NY2d 566, supra; 11B Zett-Edmonds-Schwartz, NY Civ Prac ¶ 41.03 [2] [a] [ii]), and that the statute has no direct application to obligations under separation agreements (Hirschfield v Hirschfield, 54 AD2d 656). The statute is instructive, however, as to rationale, and in weighing the husband’s argument that he did not adopt the statutory language because it was the intent of the parties to have support terminate when there was residency with another man, even in the absence of a marital "holding out.” His argument fails because he misdefines the concept of residency.
The husband has furnished no case which supports his definition of residence. To the extent that any New York case law exists on the subject, it does not uphold his position (Brown v Brown, 122 Misc 2d 849; see also, In re Bramson [Bramson], 83 Ill App 3d 657, 404 NE2d 469, wherein sporadic cohabitation — obviously not present here — does not constitute the sort of conjugal-type relationship which might serve as a basis to cut off alimony).
After reviewing the facts, the court finds that the parties did not intend the phrase "residency with another man” to go beyond the meaning ordinarily ascribed to it. The court will not apply an interpretation so blindly literal as to encompass the wholly impersonal, professional, pecuniary relationship that exists here, and between nurses and patients, lodgers and landlords, guardians and wards, housekeepers and homeowners,[2] or in other comparable relationships. It cannot, for *799 example, be plausibly claimed that a woman who has a room in a college dormitory "resides” with 36 Yalies.
The husband’s attorney drew the agreement. If he intended it to cover a sheerly professional relationship, he should have said so, explicitly.[3] Having drawn the provision he invokes, he may not now advance an interpretation at odds with its plain, commonly understood language (4 Williston, Contracts § 621, at 760 [3d ed]; see also, Watling v Hiawatha Plaza Assoc., 59 NY2d 964; Dimino v Dimino, 91 AD2d 1185), or now sponsor a wholly unexpressed self-serving claimed meaning (Williston, op. cit. § 611, at 555).
Because the parties agreed that the court was being asked to discern the parties’ intent, both sides offered evidence as to the history of negotiations. Even if, arguendo, we give the strongest consideration to the husband’s explanation as to his negotiating position, it amounts to nothing more than his desire to restrict the wife from entering into a meaningful union with another man. No such union exists between the wife and her employer. The husband has failed to present any proof that the wife has been residing, that is, cohabiting with the nonagenarian (Baker v Baker, 106 AD2d 483).
Typically, the rationale behind the termination of alimony or maintenance, when the supported spouse cohabits with a third person, is to prevent a paramour from living on support provided by the payor spouse (Hall v Hall, 82 Misc 2d 814, affd 55 AD2d 752; see also, Divorced Woman’s Subsequent Sexual Relations or Misconduct as Warranting, Alone or With Other Circumstances, Modification of Alimony Decree, Ann., 98 ALR3d 453). Here, the wife is not receiving "double support that is, second support from anyone with whom she shares bed and board” (Krawczuk v Krawczuk, 49 AD2d 1003), in the context of a new economic unit (see generally, Gallet, Former Spouse’s Cohabitation as Ground to End Alimony, NYLJ, Dec. 31, 1985, p 1, col 3). There is no such sharing or economic unit in any sense of the word (see, 48 NY Jur 2d, Domestic Relations, § 1453, at 378; 47 NY Jur 2d, Domestic Relations, § 820, at 326).
Plaintiffs motion for an order to terminate support is denied. Furthermore, the court, at the time of this hearing, was informed that the husband, a physician, has not made support payments since February of 1985, based on his interpretation of the separation agreement. The court therefore *800 orders that the plaintiff pay the accrued arrears, with interest, within 30 days of the date of service of a copy of this order with notice of entry thereon. If he fails to do so, the wife may submit a proposed judgment for arrears.
Lastly, because the husband has, for several months, withheld support for reasons which this court finds to be specious, thereby compelling the wife to litigate the matter, the court awards attorney’s fees to the defendant wife in the sum of $500 (Domestic Relations Law § 237; Ardito v Ardito, 97 AD2d 830).

. Actually, the wife is the plaintiff in the underlying divorce action. The husband, upon this application, has denominated himself as plaintiff, and Special Term, in ordering a hearing, continued that caption. We will therefore refer to the husband as the plaintiff.

. Martha Hudson, Sherlock Holmes’s landlady and the very soul of Victorian domestic propriety, would be aghast to have it said that she lived with the great detective. She would feel no better if it were asserted that she had taken up residence with two men, Holmes and Watson, at their [her] Baker Street premises.

. Doubtless, the wife would have refused to sign it.