■ URSULA LANCASTER, Respondent, v RICHARD LANCASTER, Appellant.—In a matrimonial action in which the parties were divorced by judgment entered May 4, 1977, the defendant husband appeals from a judgment of the Supreme Court, Rockland County (Edelstein, J.), dated May 19, 1986, which, after a hearing, awarded the plaintiff, his former wife, $8,500 in arrears in alimony and $3,500 counsel fees.

Ordered that the judgment is modified, on the law, by reducing the award of alimony arrears from $8,500 to $7,250; as so modified, the judgment is affirmed, with costs to the plaintiff.

The plaintiff moved to recover arrears in alimony owed to her by the defendant pursuant to the 1977 judgment of divorce between the parties. After the defendant made a cross motion to terminate or modify his alimony obligation, a hearing was held by the Supreme Court.

The defendant contends for the first time on appeal that the Supreme Court erred in awarding counsel fees to the plaintiff based solely on the affirmations of attorneys' services submitted to the Supreme Court by the attorneys for the plaintiff after the hearing. However, our review of the transcript of the hearing supports the plaintiff's contention that the attorneys for the respective parties entered into an oral agreement to have attorneys' fees awarded solely on the basis of affirmations. Although no oral agreement was transcribed in the record, at the close of the hearing, the plaintiff's counsel stated that he was going to submit an affirmation of attorneys' services to the court, upon notice to the attorney for the defendant. The attorney for the defendant made no objection at that time, and there is no indication in the record that any objection was made, prior to this appeal, to the award of counsel fees based solely on the affirmations of services submitted by the attorneys for the plaintiff. Under these circumstances, the award of counsel fees made by the Supreme Court based solely on the affirmations of services submitted by the attorneys for the plaintiff was proper (see, Melone v Melone, 113 AD2d 745).

The Supreme Court erred in awarding the plaintiff a sum representing the accumulated alimony arrears as of the date of the written decision on the hearing, which was rendered 10 weeks after the close of the hearing. The plaintiff properly gave written notice of her intention to amend her application for enforcement to include additional arrears which accrued since the commencement of her enforcement proceeding pursuant to Domestic Relations Law § 244-a. That section provides for the award of arrears "at the time of a hearing upon or submission of the matter", which entitled her to recover additional alimony arrears which accrued until the close of the hearing on the alimony issues. There is no basis for the plaintiff to recover the alimony arrears which accrued from the time of the close of the hearing until the submission of posthearing memoranda or until the written decision based on

the hearing *(see,* Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 244-a, at 777). The alimony arrears which had accrued as of the close of the hearing totaled $7,250 and the judgment is modified accordingly.

We disagree with our learned colleague concerning the import of the plaintiff's cohabitation with one Otto Hoech after her divorce from the defendant. The determination by the Supreme Court that the defendant "failed to show that the plaintiff has * * * conducted her life in such a way as to hold herself out as being married" to Mr. Hoech was an accurate assessment that the defendant failed to meet his burden of proof on this issue *(see, Matter of Bliss v Bliss,* 66 NY2d 382, 384). We note that the testimony by the plaintiff that she uses the last name of the defendant, not of Mr. Hoech, in the conduct of all of her professional and social activities and that she has never told anyone that Mr. Hoech was her husband was uncontradicted by the defendant. Moreover, despite the presence of Mr. Hoech at the hearing, the defendant failed to call him to testify. Consequently, due to the defendant's failure to prove not only that the plaintiff was living with Mr. Hoech, but that she was "holding herself out as his wife" (Domestic Relations Law § 248), the Supreme Court did not have the discretion pursuant to Domestic Relations Law § 248 to modify or annul the defendant's alimony obligation *(see, Matter of Bliss v Bliss, supra).*

Finally, we note that the defendant failed to demonstrate a significant change in the financial circumstances of either himself or the plaintiff which would warrant a modification of the defendant's alimony obligation. Kunzeman, J. P., Rubin and Kooper, JJ., concur.

Weinstein, J., concurs in part and dissents in part and votes to modify the judgment appealed from, by adding a provision prospectively relieving the defendant husband of his obligation to pay alimony and reducing the award of alimony arrears from $8,500 to $7,250, with the following memorandum: In the course of his dissent in *Northrup v Northrup* (43 NY2d 566, 572), Judge Wachtler characterized his colleagues' interpretation of Domestic Relations Law § 248 as "narrow, technical and unrealistic" and criticized a statutory loophole which permitted a former wife to continue to collect alimony from her former husband although she was living with another man, as long as she simply avoided formalizing the relationship with a marriage ceremony. The Judge expressed the view that the Legislature really intended for courts to

consider the nature and extent of the former wife's new relationship without regard to formalities and to accord due recognition to current social realities in applying the statute. Notwithstanding its recognition of the observation of the Appellate Division, First Department, that "the construction of the statute compelled by the plain meaning of its language may, in some instances, 'convert the shield of the statute into a sword of inequity, dependent only upon the deftness with which a former spouse can parry assertions that her conduct in a protracted relationship is marital in substance' (*Matter of Bliss v Bliss*, 107 AD2d 394, 397)", the Court of Appeals has nevertheless held that proof of cohabitation alone is insufficient to warrant a termination of alimony obligations pursuant to Domestic Relations Law § 248 (*Matter of Bliss v Bliss*, 66 NY2d 382, 389, *revg* 107 AD2d 394, *supra*). Rather, it is necessary, under the aforesaid provision, to demonstrate both the fact of cohabitation as well as some conduct on the part of the former wife which amounts to a "holding out" that she is married to her male companion.

While it has been made abundantly clear that the "holding out" requirement necessitates a display of some assertive conduct (*see, Northrup v Northrup, supra*, at 571), I find the evidence adduced herein sufficient to satisfy the requirement and thereby to prevent the plaintiff wife from circumventing the underlying intent of the statute.

Pursuant to a stipulation of settlement entered into by the parties, which was incorporated but not merged into the judgment of divorce, the defendant was required, *inter alia*, to pay to the plaintiff alimony in the sum of $125 per week. While a commencement date of March 11, 1977 was specified, no termination date was set forth in the stipulation. At the hearing conducted with respect to the plaintiff's enforcement application and the defendant's cross motion to terminate his alimony obligation, the plaintiff unequivocally testified that she had been continuously living in a condominium owned by Otto Hoech since October 1977 and that they shared the same bedroom. She neither paid rent nor incurred any carrying charges or mortgage payments with respect to the premises. Although the plaintiff and Mr. Hoech traveled together extensively and invariably shared the same accommodations on those occasions, she was curiously unable to recall whether she had engaged in such assertive conduct as registering in a hotel as Mr. and Mrs. Hoech. Significantly, the homeowner's insurance policy issued by the State Farm Insurance Company with respect to the premises at which the plaintiff resided

with Otto Hoech, listed the insureds as "Hoech, Otto & L". Moreover, the plaintiff allowed the telephone which she regarded as her own to be listed under the name of Otto Hoech. These circumstances enhanced by the salient factor of the plaintiff having undertaken residency with her male companion on a rent-free basis since 1977, belie any claim of a nonmarital situation. In fact, the defendant's motion papers allude to a potential clandestine marriage between his former wife and Otto Hoech on one of their visits to Germany.

In conclusion, I am of the view that given the plaintiff's uncontroverted cohabitation with another male and her conduct from which a "holding herself out" as his wife could be inferred, the defendant former husband should be relieved of his obligation to make further alimony payments.

With respect to the remaining issues raised by the parties, I have no quarrel with the disposition set forth in the majority decision.