■ CAROLE LEFKON, Appellant, v DANIEL DRUBIN, Respondent.—In a matrimonial action in which the parties were divorced by a judgment entered May 8, 1979, the plaintiff wife appeals from an order of the Supreme Court, Queens County (Zelman, J.), dated July 6, 1987, which, after a hearing, denied her motion for a money judgment against the defendant for arrears of alimony, an order holding the defendant in contempt for refusal to comply with the judgment of divorce and an award of counsel fees.

Ordered that the order is reversed, with costs, and the matter is remitted to the Supreme Court, Queens County, for a new determination in accordance herewith.

The defendant husband contends that the plaintiff wife was habitually living with her paramour in violation of their separation agreement, thereby releasing him from his obligations to pay alimony. We disagree.

The testimony adduced at the trial established that although the plaintiff's paramour spent approximately two nights a week at the plaintiff's apartment, he maintained his own separate residence. The plaintiff's paramour received his mail at his home and kept his belongings there. He did not financially contribute to the payment of the plaintiff's expenses. Under these circumstances, defendant failed to establish by a preponderance of the evidence that the plaintiff was habitually living with another man (see, Salas v Salas, 128 AD2d 849, lv dismissed 70 NY2d 747).

Furthermore, pursuant to the parties' separation agreement, the husband is obligated to pay the wife's attorneys' fees in the event she is forced to institute legal proceedings to enforce the separation agreement where the husband is in default thereof. Accordingly, the plaintiff is entitled to an award of counsel fees. Therefore, the matter is remitted to the Supreme Court, Queens County, for a new determination with respect to the plaintiff's motion, which shall include an award of arrears of alimony, and an award of counsel fees. Mollen, P. J., Mangano and Kunzeman, JJ., concur.

Weinstein, J., dissents and votes to affirm the order appealed from, with the following memorandum: It is my position that the evidence adduced at trial amply demonstrated that the plaintiff had habitually lived with a man for 60 days

in violation of the parties' separation agreement so that the defendant should be relieved of his alimony obligation pursuant to the forfeiture clause thereof. To hold that the forfeiture clause may not be triggered absent a specific finding that the plaintiff's paramour contributed economically to the payment of her expenses is to impose a stricture beyond that contemplated by the parties as evinced by the unequivocal terms of their agreement.

In his dissent in *Northrup v Northrup* (43 NY2d 566, 572), Judge Wachtler characterized his colleagues' interpretation of Domestic Relations Law § 248 as "narrow, technical and unrealistic" and criticized a statutory loophole which permitted a former wife to continue to collect support from her former husband although she was living with another man, as long as she simply avoided formalizing the relationship with a marriage ceremony. In his view, the Legislature intended for courts to consider the extent of the wife's new relationship without regard to formalities and to recognize current social realities in applying the statute.

The social climate today, as contrasted with that prevailing in 1962 when Domestic Relations Law § 248 was enacted, has undergone notable changes. As noted in a recent decision of the Family Court, Westchester County *(Nanette M. v Gerald S. M.,* NYLJ, Mar. 6, 1986, at 18, cols 2, 4): "Modern differences are obvious. Today, married women frequently prefer to retain their maiden names for professional or other reasons. Telephone listings create little inference as to marital status. It is often difficult to ascertain the marital status of men or women by name or observation of their living arrangements. Unmarried couples living together are largely accepted socially and professionally without question or comment".

Notwithstanding its recognition that "the construction of the statute compelled by the plain meaning of its language may, in some instances, 'convert the shield of the statute into a sword of inequity, dependent only upon the deftness with which a former spouse can parry assertions that her conduct in a protracted relationship is marital in substance' *(Matter of Bliss v Bliss,* 107 AD2d 394, 397)" the Court of Appeals has recently held that proof of cohabitation alone is insufficient to warrant a termination of support obligations pursuant to Domestic Relations Law § 248 *(Matter of Bliss v Bliss,* 66 NY2d 382, 389, *revg* 107 AD2d 394, *supra).* Rather, it is necessary, under the aforesaid statute, to demonstrate both cohabitation and conduct by the former wife amount to a "holding out" that she is married to her paramour.

Were we constrained to apply Domestic Relations Law § 248 to the facts of this case, therefore, a decision favorable to the plaintiff would be mandated in view of the total absence of any evidence that the plaintiff held herself out as another's wife (*Brown v Brown,* 122 AD2d 762, 764-765 [Weinstein, J., concurring in part and dissenting in part], *appeal dismissed* 68 NY2d 910, 70 NY2d 763). However, the parties to the instant action had entered into a separation agreement which was incorporated but not merged into the judgment of divorce. As set forth in article III of the agreement, the defendant was obliged to pay the weekly sum of $300 to the wife commencing on the Friday succeeding the closing of title on the sale of the marital residence. All liability of the husband for the support and maintenance of the wife would cease "in the event the WIFE is habitually living together with an adult male for a period of more than 60 days, irrespective of whether they hold themselves out as husband and wife while so habitually living together". The clear intent of the parties in including that provision in their separation agreement was to provide for forfeiture of support by the plaintiff, even in the absence of a finding that she held herself out as married to another male, as long as there existed evidence that she was living with him. There would have been no logical purpose in adding such a stipulation if the only protection it afforded was that already afforded by statute. Where, as here, the parties have voluntarily entered into such an agreement, the court may not refuse to enforce it absent some overriding public policy rationale not present here (*Scharnweber v Scharnweber,* 65 NY2d 1016, 1017). The existence of the aforesaid stipulation differentiates this case from *Matter of Bliss v Bliss (supra)* and compels a result favorable to the defendant husband (*cf., Lancaster v Lancaster,* 141 AD2d 701).

In the instant case, the plaintiff began to date one James Martin in early 1984. Shortly thereafter, the couple began to have sexual relations on a regular basis in the plaintiff's apartment. Martin did not sleep over on weekends since the plaintiff's daughter spent her weekends at her mother's apartment. Martin would generally return to the plaintiff's apartment on Sunday evenings and would spend at least 1 or 2 other nights there each week. While not continuous, their cohabitation was certainly habitual. Although the plaintiff claimed that Martin received his mail at a Jackson Heights apartment, his driver's license indicated his address as 895 Campagnoli Avenue, Copiague, and, prior thereto, as 72 Pace Drive South, West Islip. Martin's name was not on the mail-

box of the Jackson Heights apartment. Neither the telephone nor the utilities was registered in Martin's name. Martin admitted that he kept a toothbrush, underwear and socks at the plaintiff's apartment. There is testimony in the record, however, that Martin had revealed to a business associate that he also kept some of his clothes at the plaintiff's apartment and some in his car, and never kept anything in his own apartment since he was rarely there. There was further testimony that Martin purposefully left the plaintiff's apartment by 6:00 A.M. to avoid being seen by the neighbors. Moreover, he provided the plaintiff with the use of an automobile from his dealership free of charge. Other than paying for their vacations and entertainment, Martin denied making any contributions towards the plaintiff's support.

Martin was admittedly aware of the forfeiture provision of the parties' separation agreement. In June 1986 the plaintiff first learned that the defendant planned to discontinue his alimony payments to her on the ground that she was cohabiting with another man. She thereafter marked a calendar for the dates in 1986 and 1987 on which she slept with Martin. She described her relationship with Martin as "just sex" as opposed to living together.

Under the circumstances, I have little doubt that the plaintiff intentionally restricted her relationship with Martin so as not to jeopardize her receipt of alimony from the defendant. I conclude that the defendant established, by a preponderance of the evidence, that the plaintiff was living with an adult male for a period in excess of 60 days in contravention of the separation agreement. Consequently, she was no longer entitled to receive alimony payments *(see, Smith v Smith,* 88 AD2d 658). Although cases decided on the basis of Domestic Relations Law § 248 are distinguishable from the case at bar, which is based on a separation agreement which was incorporated but not merged into the judgment of divorce, the same right is at stake in both situations, i.e., the right to receive alimony or maintenance. Accordingly, the same standard of proof—a preponderance of the evidence—should apply.

The separation agreement provided that the defendant would reimburse the plaintiff for reasonable attorneys' fees in the event she was compelled to institute legal proceedings due to the defendant's default. Since the Supreme Court did not find the defendant to be in default, it properly refused to award the plaintiff reasonable counsel fees. Accordingly, I vote to affirm the order appealed from. *[See,* 135 Misc 2d 665.]