■ RICHARD OLSTEIN, Appellant, v JANET OLSTEIN, Respondent. [766 NYS2d 189] —Orders, Supreme Court, New York County (Laura Drager, J.), entered February 6, 2002 and April 3, 2002, respectively, which granted defendant wife's cross motion to confirm the report of the Special Referee finding that the husband failed to prove that the wife had remarried within the meaning of the parties' separation agreement and denied the husband's motion to reject the report, and awarded the wife $22,000 in counsel fees, unanimously reversed, on the law, without costs, the husband's motion to reject the report granted, the wife's cross motion to confirm denied, the husband's maintenance obligation terminated pursuant to the parties' agreement and the award of counsel fees vacated.

In this postjudgment matrimonial proceeding, the husband seeks to terminate his obligation to pay maintenance to the wife on the ground that she has remarried within the meaning

of the parties' separation agreement. The wife seeks to enforce such obligation and obtain a judgment for maintenance arrears and an award of counsel fees pursuant to Domestic Relations Law § 237 (c).

The parties' separation agreement provides that the husband's maintenance obligation will terminate upon the wife's death or remarriage. "Remarriage" is defined as: "The residing of the Wife with a non-relative adult male without the presence of a spouse of said male for a reasonably continuous period of more than six months in any calendar year."

The husband discontinued the maintenance payments in July 1998, based on his belief that the wife had "remarried." Thereafter, the wife obtained an income execution order and the husband moved to vacate said order and to terminate his maintenance obligation. Supreme Court directed a hearing before a Special Referee on the issues of whether the wife had remarried and what, if any, money is owed to either party.

After the hearing, at which the wife and the parties' daughter-in-law, Donna Olstein, testified, the Special Referee found in favor of the wife, ruling that the husband failed to prove by clear and convincing evidence (or even by a preponderance of the evidence) that the wife and her former boyfriend actually resided together, let alone for the requisite period of time. The Referee stated that Donna Olstein's "sporadic observations" were insufficient to prove the wife's cohabitation, especially given the absence of additional evidence that they shared a residence or expenses.

The husband moved to reject the Referee's report, and supplemented his motion papers with subpoenaed records showing that the wife received mail addressed to herself and her friend at a particular address. Also submitted was a rental registration form for the wife's cottage which showed that the cottage was rented to a third party in October 1995. The wife moved to confirm the report. The trial court confirmed the report of the Special Referee without elaboration, and awarded the wife $22,000 in counsel fees pursuant to Domestic Relations Law § 237 (c) on the ground that the husband willfully failed to comply with his maintenance obligation and refused to pay court-ordered arrears. We reverse.

Applying the correct standard of proof to the instant proceedings (see *Famoso v Famoso*, 267 AD2d 274, 274-275 [1999]; *Brown v Brown*, 122 AD2d 762, 763-764 [1986], *appeal dismissed* 68 NY2d 910 [1986]), we find that the husband has established by a preponderance of the evidence that the wife had remarried within the meaning of the parties' separation

agreement. Donna Olstein, who has an amicable relationship with both parties, testified that during a 2½-year period from mid-1995 through the end of 1997, the wife resided with a non-relative adult male at two different residences in upstate New York. According to Olstein, she visited the wife and her male friend at the friend's residence two to four times per month, and that the wife referred to that location as "our house" or "home." Olstein further testified that the wife and her friend jointly operated an antique business on the first floor of those premises, while living on the second floor. After the wife and the friend moved to a nearby farmhouse owned by the wife in August 1996, Olstein testified that she and her husband (the wife's son) visited them at least once a week while the son was assisting the wife's friend with some work on the property.

The wife's denial that she ever lived with her friend during this period is undermined by her evasive testimony concerning the nature of their relationship. At first, she denied that the relationship was romantic in nature. Later, she conceded that it became romantic, but she could not give a specific time frame. She also conceded that she shared meals and stayed overnight with her friend on many nights, but "not most nights." Most significantly, Olstein testified that during the period that the wife was living with her friend at his address, the wife's one-bedroom cottage was rented out to another individual. The wife never refuted this testimony nor clarified where she was living during this period.

The cases cited by the wife are distinguishable. For instance, in *Matter of Emrich v Emrich* (173 AD2d 818, 819 [1991], *lv denied* 78 NY2d 860 [1991]), the stipulation between the parties provided that the maintenance obligation would terminate if the wife "resid[ed] on a substantially continuous basis * * * for a period not less than sixty (60) days with another male," a requirement more stringent than the "reasonably continuous" one in the instant agreement. Additionally, while some cases have focused on whether the recipient spouse and his or her paramour maintain separate residences (*see Famoso v Famoso*, 267 AD2d at 275; *Matter of Emrich v Emrich*, 173 AD2d at 820; *Lefkon v Drubin*, 143 AD2d 400 [1988], *lv dismissed* 74 NY2d 791 [1989]; *Salas v Salas*, 128 AD2d 849, 851 [1987], *lv dismissed* 70 NY2d 747 [1987]), that rationale does not help the wife's case here since the unrefuted testimony shows that in late 1995 she was renting her separate residence, the cottage, which was her only other habitable residence in the area at the time.

We further note that Olstein's credible testimony was inde-

pendently confirmed by objective evidence submitted by the husband on his motion to reject the report, namely, the letter addressed to both the wife and her friend at the friend's address and a rental registration form indicating that in October 1995 the wife's cottage was rented to a third party. Contrary to the wife's argument, this evidence could properly be considered pursuant to CPLR 4403 and raises a strong inference that the wife lived with her friend both at his residence and the farmhouse. Consequently, we find that the husband proved by a preponderance of the evidence that the wife resided with a nonrelative male for a "reasonably continuous" period of more than six months in a calendar year, and that his maintenance obligation should be terminated pursuant to the express terms of the parties' separation agreement.

In light of the above finding, we vacate the award of attorneys' fees to the wife. Concur—Nardelli, J.P., Sullivan, Friedman, Marlow and Gonzalez, JJ.