*834 OPINION OF THE COURT
Kenneth R. Fisher, J.
In this combined CPLR article 78 proceeding and action for a declaratory judgment, defendants/respondents move to dismiss the amended petition/complaint. By stipulation of the parties, and contrary to the prior order of the court pertaining to the same, the parties ask the court to convert the motion to dismiss into a motion for summary judgment “pursuant to CPLR 3211 (c) on due notice to all parties.” (Stipulation and order, dated Nov. 28-29, 2007, endorsed as an order of the court on Dec. 4, 2007.) That request is granted.
The case turns on the definition of “sales tax revenue” under Tax Law § 1262-g (1) (b), and the definition of “net collections” pursuant to Tax Law § 1262 (f) (1). The case also concerns what is meant by “net collections” under the various biennial amendments to section 1262-g reauthorizing the additional 1% sales tax distributions in Monroe County, in the context of the several amendments to sections 1262-a through 1262-m on the same subject for several other counties throughout the state. Ultimately, however, the case turns on what is meant by “net collections” under the sales tax Medicaid intercept amendments enacted by Laws of 2005 (ch 58 [eff Jan. 1, 2008]), in particular to section 1261 (f) (8).
The school districts contend that, as used in section 1261 (f) (8), the term “net collections” must refer to the gross amount of sales taxes collected in Monroe County, which is sent by the vendor collectors to the State Department of Taxation and Finance, less the deduction of collection and administrative expenses authorized by section 1262 (f) (1) without regard to what is actually received back in Monroe County, and not to the amounts ultimately received by the County and its sharing partners after deduction of collection and administrative expenses. While that construction of the statute has superficial appeal because it is permissible (but certainly not required) under a literal reading of section 1262 (f) (l)’s definition of “net collections,” such an interpretation cannot be squared with the entire distribution scheme of sections 1261, 1262 (b), (c), and (d), and sections 1262-a through 1262-m, nor is it consistent with the use of the term “net collections received” in section 1263. A court’s duty, even when construing words of seeming unambiguous meaning (New York State Bankers Assn. v Albright, 38 NY2d 430, 436 [1975] [“(a)bsence of facial ambiguity is . . . rarely, if ever, conclusive”]), is to
*835 “consider a statute as a whole, reading and construing all parts of an act together to determine legislative intent (see McKinney’s Cons Laws of NY, Book 1, Statutes § 97), and, where possible, . . . ‘harmonize[ ] [all parts of a statute] with each other . . . and [give] effect and meaning ... to the entire statute and every part and word thereof.’ ” (Friedman v Connecticut Gen. Life Ins. Co., 9 NY3d 105, 115 [2007], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 98.)
For the reasons stated below, the court finds that adoption of the school districts’ reading of section 1261 (f) (8) would violate the court’s “obligation to harmonize the various provisions of related statutes and to construe them in a way that renders them internally compatible.” (Matter of Aaron J., 80 NY2d 402, 407 [1992].)
Beginning with the “preferred” “sequential]” approach to statutory construction (Matter of Long v Adirondack Park Agency, 76 NY2d 416, 420 [1990]), the term net collection was defined in the original sales tax distribution statutes enacted by Laws of 1965 (ch 93), then section 1262 (g) (1), just as it is today. At that time, so far as the court’s research has revealed, there was no comparable sales tax intercept program enacted by the Legislature, and the only deduction from amounts ultimately distributed to the counties imposing a sales tax was collection and administrative expenses. In other words, the definition described precisely what the counties eventually received.
When the County first secured the Morin-Ryan sharing formula by state legislation, under the Monroe County Sales Tax Adjustment Act, codified in section 1262-g, the term net collection was not primarily employed. Instead, the term “sales tax revenue” was employed, meaning “[t]he net amount of sales and compensating use taxes collected by the state of New York during an annual fiscal year and thereafter distributed to the county of Monroe.” (Tax Law § 1262-g [1] [b] [emphasis supplied].) Nevertheless, section 1262-g, with some modifications, incorporated the distribution scheme of section 1262 (b), which in turn incorporated the distribution scheme of section 1262 (c), the latter of which employed the term “net collections” in the hold harmless section applicable to Monroe County towns, and which generally uses the term “net collections” in that provision applicable to the County or educational purpose set-aside of section 1262 (a). Unquestionably, these provisions are referring to sales tax revenue which ultimately makes its way back *836 to the counties. Indeed, throughout the provisions applicable to Niagara and Erie Counties, section 1262 (d) (1) and (2), the terms “net collections” and “net collections received” are used interchangeably, and where the term “net collections” is used alone, as in section 1262 (d) (2), the context manifestly demonstrates a legislative intent only to refer to amounts actually received by the county. (See also § 1262 [d] [3].)
Moreover, despite the use of the then new term “sales tax revenue” in section 1262-g (1) (b), elsewhere in section 1262-g the Legislature retained many aspects of the distribution scheme of section 1262 applicable to the County of Monroe, which employs the term net collections. (See § 1262-g [2] [a] [ii] [preamble], [iv] [both incorporating the “net collections” concept of § 1262].) Accordingly, enactment of section 1262-g (“sales tax revenue”) made the distribution scheme as between it and section 1262 “interlocking” such that the principle of statutory construction is invoked which requires the court to “give the statute a sensible and practical over-all construction, which is consistent with and furthers its scheme and purpose and which harmonizes all its interlocking provisions.” (Long v Adirondack Park Agency, 76 NY2d at 420 [“especially when an opposite interpretation would lead to an absurd result that would frustrate the statutory purpose”].)
Thereafter, when several counties sought to increase their sales tax by (usually) one percent, the Legislature amended the distribution scheme separately with respect to that additional one percent. For Monroe County, the Legislature returned to the concept of “net collections, as such term is defined in section 1262 of the Tax Law.” (L 1999, ch 194, § 2.) For many other counties, although for not all, the Legislature employed the term “net collections received.” (See §§ 1262-a [Tompkins County], 1262-b [a] [2], [3] [Westchester County]; §§ 1262-h [Steuben County], 1262-i [Tioga County], 1262-j [Suffolk County], 1262-m [Chenango County], 1262-m [Saratoga County].) Many of these provisions were reenacted in haec verba in 2007, despite the enactment in 2005 of the Medicaid intercept option which employed in section 1261 (f) (8) the concept of net collections. Adopting the school districts’ restrictive definition of “net collections” in section 1261 (f) (8) thus would render, for the enumerated counties which employ the term “net collections received,” that aspect of the term, “received,” entirely superfluous.
Courts “decline to read [an] amendment in such a way as to render some of its terms superfluous.” (Matter of OnBank & *837 Trust Co., 90 NY2d 725, 731 [1997].) These legislative amendments, in addition to the other statutory aids in construction, including the use of “net collections” in section 1262, “net collections received” in sections 1262, 1263 (catch-all distribution provision), and the enumerated one percent distribution schemes throughout the state enumerated above, and “sales tax revenue” in section 1262-g, all in an interchangeable manner with no evidence of legislative intent to treat separately or differently, “may be used to divine the legislative intent with regard to the original law,” i.e., what the Legislature meant by the definition in section 1262 (f) (1). (Itri Brick & Concrete Corp. v Aetna Cas. & Sur. Co., 89 NY2d 786, 796 [1997]; see also Ferres v City of New Rochelle, 68 NY2d 446, 451 [1986] [“In construing (a statute, a court) may . . . look . . . to . . . subsequent amendments to it”].)
This construction of the definition contained in section 1262 (í) (1), as referring to amounts returning to the County and its sharing partners, is virtually required by the structure of section 1261 (f) (8) itself, which expressly contemplates that “a county’s net collections” may be “diminished below a level sufficient to meet any such obligation or commitment” (i.e., “to distribute and pay or allocate net collections pursuant to this part”) (Tax Law § 1261 [f] [8]). Under the school districts’ interpretation, i.e., that “net collections” as peculiarly used in section 1261 (f) (8) refers to the taxes received by the state from the vendors less the collection and administrative expenses referred to in section 1262 (f) (1) without regard to the funds deemed ultimately payable to the County and its sharing partners, necessarily there could be no diminution of net collections received by the County and its sharing partners under the Medicaid intercept program under any circumstance.
Such an interpretation, which leaves aspects of the legislative enactment without meaning, is to be avoided. (McKinney’s Cons Laws of NY, Book 1, Statutes § 231; Cacciatore v New York Cent. Mut. Fire Ins. Co., 301 AD2d 253, 255-256 [4th Dept 2002].) “The courts should strive to avoid an interpretation of a statute where the literal application of one section will nullify the effect of another, especially when this produces an absurd result” (Matter of Roballo v Smith, 63 NY2d 485, 489 [1984]), which certainly would be the case if the school districts’ construction were to be adopted, rendering the above-cited provisions of questionable application and the intercept option itself an essentially empty exercise. Because “ ‘it is practicable to give’ ” *838 that aspect of section 1261 (f) (8) which recognizes that the intercept program will diminish net collections a “ ‘distinct and separate meaning,’ ” simply by construing the original section 1262 (f) (1) definition of net collections as referring only to the funds ultimately received by the County, because that is all it could have referred to when originally enacted in 1965, the school districts’ interpretation is rejected. (Matter of Bliss v Bliss, 66 NY2d 382, 389 [1985], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 231, at 391.)
As the County contends, there is a world of difference between an “obligation or commitment to distribute and pay or allocate net collections” to a sharing partner under a legislatively mandated lump sum, as in Columbia County in the case of the City of Hudson ($40,000 quarterly from the county share), in Erie County in the case of the cities of Lackawanna and Tonawanda (guaranteed annual minimum of $1,172,706 and $1,534,671, respectively), Herkimer County in the case of the City of Little Falls and the towns and villages ($70,000 quarterly, and in the aggregate $530,000 quarterly, respectively), Saratoga County in the case of the City of Mechanicville and the Town of Milton ($1,542,000 and $60,000 annually, respectively),* and Steuben County in the case of Hornell ($550,000 of the net collections attributable to the additional 1% tax) and the towns and villages (which share $750,000 in the aggregate) (Carpenter affidavit, exhibit A, at 31-34), and an obligation or commitment geared only to percentages of net collections as is the case for Monroe County. That portion of section 1261 (f) (8) which provides that the County, by reason of choosing the intercept option, is not relieved of such obligations or commitments plainly has application to both types of obligations. Indeed, that portion which permits (but does not require) a county to use general funds to make up the “diminished” net collections for “such obligation or commitment, notwithstanding any law to the contrary” (Tax Law § 1261 [f] [8]) plainly has mandatory application to a lump-sum obligation, but only permissible application to a percentage obligation not geared to any specific or prescribed amount. Otherwise, it would have been wholly gratuitous to make the last sentence of section 1261 (f) (8) in words of “authoriz [ation] ’ ’ instead of in words of *839 nondiscretionary duty. There is no other way to harmonize these interlocking provisions to give to each practical application in accordance with legislative intent. (Matter of Bliss v Bliss, 66 NY2d at 389; see also Sanders v Winship, 57 NY2d 391, 396 [1982]; Montes v City of Buffalo, 295 AD2d 896, 897 [4th Dept 2002]; Matter of Honeoye Cent. School Dist. v Berle, 72 AD2d 25, 35 [4th Dept 1979].)
Finally, the court is fortified in its position by the decision of Judge (Acting Supreme Court Justice) Craig Doran in the 2006 litigation instituted by the County. In that case, all but one of the declarations sought by the County were awarded by the court, the only one declined on procedural grounds that it was nonjusticiable. While the Appellate Division (County of Monroe v City of Rochester, 39 AD3d 1272 [2007]) ultimately vacated each declaration as nonjusticiable in that case, because of the lack of a county resolution making an irrevocable adoption of the Medicaid intercept option, an impediment all concede is not present in this case, Acting Justice Doran’s opinion is highly persuasive.
The school districts’ reliance on the letter opinion of the Acting Commissioner of the Department of Taxation and Finance is misplaced. The rule that deference should be given to an agency’s determination of a statute’s meaning, when the agency is responsible for interpreting the statute, generally applies “ ‘where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially.’ ” (Matter of Howard v Wyman, 28 NY2d 434, 438 [1971] [emphasis supplied], quoting Matter of Mounting & Finishing Co. v McGoldrick, 294 NY 104, 108 [1945].) This is not such a proceeding, as it would be, for example, if the question had first been submitted to the commissioner in an administrative proceeding for a determination made upon evidence adduced at an agency hearing or upon other record evidence, which then became reviewable in an article 78 proceeding. This case does not involve such a proceeding first submitted to the agency. In any event, if “the question is one of pure legal interpretation of statutory terms, deference ... is not required.” (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 102 [1997]; see also Matter of Atlantic Cement Co. v Williams, 129 AD2d 84, 89 [3d Dept 1987] [“where the question is merely one of statutory reading and analysis, an agency’s interpretation is entitled to little weight”]; Lorillard Tobacco Co. v Roth, 99 NY2d 316, 322 [2003] [same].) “By contrast, where, *840 as here, the question is one of pure statutory interpretation ‘dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight.’ ” (Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal, 5 NY3d 303, 312 [2005], quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980].) This is, as in Lorillard, a pure statutory interpretation case, not an agency deference case.
Accordingly, the article 78 proceeding is dismissed.

 Litigated in Matter of Town of Moreau v County of Saratoga (142 AD2d 864 [3d Dept 1988] [town lacked standing to challenge reallocation of county sales tax revenues by virtue of an approved inter-municipal agreement authorized by section 1262 (c)]).